BENJAMIN R. BOOTHBY *vs.* JOHN BENNETT.

York.    Opinion December 31, 1881.

*Limitations, statute of.    Acknowledgment.    R. S., c. 81. § 93.*

Where the issue between the parties at the trial was whether the defendant agreed in 1873 to be personally responsible for the deposit of certain bonds as collateral security for a loan which the plaintiff then made a third party, so that the defendant was in fault in letting the money go without securing them, or whether, as defendant claimed, his whole relation to the loan was that of an agent, acting for the plaintiff in good faith and under his direction, and on July 6, 1876, the defendant wrote the plaintiff: "I am expecting the interest on said note to be paid to me within ten days. In regard to the principal of $1000, I have these bonds which I named to you. I understand they are worth a small premium, I think about two per cent. above par. I am authorized to let you have the bonds at their market value if you want them; or I will dispose of them to other parties and get you the money. Please inform me by return mail whether you would like the bonds or the money."

*Held*, that the letter was not an express acknowledgment in writing of the original contract, as claimed by the plaintiff, such as is required by R. S., c. 81, § 93, to take the contract or promise out of the operations of the statute of limitations.

ON EXCEPTIONS, and motion to set aside the verdict.

Assumpsit.

(Declaration.)

"In a plea of the case for that the said defendant at Augusta, to wit, at Limerick in the said county of York on or about the twelfth day of February, A. D. eighteen hundred and seventy-three, requested of the plaintiff to loan to one A. G. O'Brion one thousand dollars, on demand with interest, upon the promissory note of said O'Brion, secured by bonds of the United States government to the amount of one thousand dollars as collateral thereto, and the plaintiff then and there agreed with said defendant to make said loan upon the terms and security aforesaid, and in pursuance of said agreement the plaintiff then and there delivered to said defendant five hundred dollars in cash, and on or about the twenty-sixth day of March, A. D. 1873, at Cornish, in said county, the plaintiff delivered to said defendant another five hundred dollars in cash, the whole to be, by said defendant in behalf of said plaintiff, loaned to said O'Brion upon the terms and security aforesaid, and thereafterwards on or about the second day of April, A. D. 1873, the said defendant contriving to injure and defraud the plaintiff, delivered to said plaintiff the note of said O'Brion for one thousand dollars, but did not deliver United States bonds as aforesaid as collateral as he had agreed to do, but instead thereof delivered to the plaintiff a number of notes of individuals amounting to one thousand dollars as collateral thereto, but which the plaintiff is unable to particularize as they are not in his possession or under his control, but have been returned to said defendant; the defendant then and there falsely and fraudulently representing said notes to be good and collectible, and the plaintiff relying upon said representations of said defendant, accepted said O'Brion's note, and said collateral notes. And the plaintiff avers that said collateral notes were not good and collectible, and that this was then and there well known to said defendant. But the plaintiff had no knowledge of said fact until the year 1876, when for the first time he discovered that said collateral notes were not good and collectible when so delivered to him by said defendant, but were utterly worthless, and thereupon he immediately, to wit, March 1, A. D. 1876, returned to said defendant the note of said O'Brion and all

said collateral notes for the reason of their worthlessness as aforesaid and demanded of said defendant either the return of his one thousand dollars in money so deposited with said defendant to be loaned as aforesaid and interest thereon or the note of said O'Brion secured by United States government bonds as aforesaid as agreed by defendant, and said defendant then and there accepted and received said O'Brion's note and all said collateral notes, and promised and agreed with said defendant to procure and deliver to him forthwith the note of said O'Brion as aforesaid, secured by bonds of the United States as aforesaid, and to the amount aforesaid. But the said defendant though often requested, has never obtained or delivered to the plaintiff the note of said A. G. O'Brion for one thousand dollars secured by United States bonds as collateral aforesaid to the amount aforesaid, nor has he paid or returned to the plaintiff his said one thousand dollars or any part thereof, so as aforesaid deposited with said defendant to be loaned as aforesaid upon the security aforesaid, but wholly neglects and refuses so to do."

The writ also contained the money counts. *Ad damnum* $2000. Writ dated September 1, 1879.

The plea was general issue, and statute of limitations under a brief statement.

The opinion states the material facts and the question presented by the defendant's exceptions.

*Ayer and Clifford* and *Frank M. Higgins*, for the plaintiff, cited: Story Contr. § 1427; Pars. Contr. 62, 63, 67-73; 4 Maine, 41; 4 Maine, 413; 15 Maine, 443; 17 Maine, 184; 71 Maine, 313.

*L. S. Moore and Ira T. Drew*, for the defendant, cited: 15 Maine, 443.

SYMONDS, J. The declaration alleges that in February, 1873, the defendant requested the plaintiff to loan to one A. G. O'Brion the sum of $1000, upon the promissory note of O'Brion, with the deposit of United States bonds as collateral security; that the plaintiff in pursuance of this request, and upon the agreement of the defendant to effect the loan in that way, gave the $1000

to the defendant, to be by him in behalf of the plaintiff "loaned to said O'Brion upon the terms and security aforesaid;" and that the defendant broke his agreement, to the injury of the plaintiff, by lending the money to O'Brion upon his note without the collateral security which had been promised.

These are the substantial averments of the declaration. What is alleged of the acceptance of certain notes, as collateral, in place of the bonds, and of such acceptance being void of effect by reason of the fraud of the defendant; what is set forth in regard to a return of the notes to the defendant, upon the discovery of the fraud, in 1876, the demand on him for payment of the $1000 loaned with interest or the deposit of the United States bonds, and the renewal at that date of the defendant's original promise; these parts of the declaration simply show the facts attending the alleged breach of the contract of February, 1873. They do not present a distinct ground of liability. There is no consideration averred for a new and independent promise in 1876. The right to recover upon proof of what took place in 1876, alone, does not appear to have been claimed at the trial, and is not urged in argument here, under the declaration in its present form.

The plaintiff relies upon the defendant's agreement of February, 1873, as at first stated, to procure United States bonds as collateral security for the loan, and his breach of contract in lending the money without obtaining them. The rest of the declaration simply negatives the valid acceptance by the plaintiff of other security instead of the bonds, and states the circumstances under which the defendant, without new consideration, orally renewed the promise in 1876. The averment of the breach of contract is distinct in its reference to that of 1873.

The agreement declared upon is an oral one, and having been made more than six years before the date of the writ, September 1, 1879, the statute of limitations is a bar, unless there is something in the case to defeat the operation of the general rule. An acknowledgment of liability, or new promise to perform the contract, cannot have this effect, "unless the acknowledgment or promise is an express one, in writing, signed by the party chargeable thereby." R. S., c. 81, § 93.

It is the claim of the plaintiff—and this claim was sustained by the *pro forma* ruling at the trial—that the defendant's letter of July 6, 1876, was a sufficient written acknowledgment of the original contract to keep it in force under this section of the statute.

A thorough examination of the case leaves no doubt that this ruling was erroneous.

The issue between the parties at the trial was whether the defendant made the agreement alleged—to be personally responsible for the deposit of the bonds—so that he was in fault in letting the money go without securing them; or whether, as he asserted, his whole relation to the loan was that of an agent, acting for the plaintiff in good faith and under his direction. We fail to find in the letter of July 6, standing alone or in its proper connection in the correspondence, anything which is not as consistent with the theory of the defence on this point as with that of the plaintiff. The defendant on March 18, 1876, had procured for the plaintiff two new notes from O'Brion for the loan and the interest on it, with railroad bonds of less value than was then represented, as collateral security for them; had notified the plaintiff by letter of that fact on March 24, inquiring if he should give O'Brion the thirty days delay which he requested on the smaller note, and if the security was satisfactory; the the plaintiff had replied by letter on March 29, that he did not like the security, did not feel safe, wanted something there was no doubt about, and desired the defendant " to look right after it," as Boston creditors were troubling O'Brion; on June 19, following, the plaintiff had written again to inquire about it, saying, "I am anxious to know it is all right;" and to this the defendant replied by the letter of July 6, "I am expecting the interest on said note to be paid to me within ten days. In regard to the principal of $1000, I have those bonds which I named to you. I understand they are worth a small premium, I think about two per cent. above par. I am authorized to let you have the bonds at their market value, if you want them; or I will dispose of them to other parties and get you the money. Please inform me by return mail whether you would like the

bonds or the money." Thereupon the plaintiff wrote his letter of July 13, saying, "I prefer the money; I don't want the bonds any way."

In the proposition of the defendant to dispose of the bonds which he had obtained on March 18, as security for this loan, and get the money for the plaintiff, nor in anything else which this letter of July 6 contains, can we see any recognition whatever, or acknowledgment, by the defendant of a personal liability on his part to furnish government bonds as the security, arising out of a contract to do so made in February, 1873. If it may be said that the letter is consistent with such a sense of obligation on his part, it is equally so with the theory that he was acting simply under the responsibilities of an agent. The letter is one that might have been written, word for word, precisely as it is, if there had been no transaction between the defendant and the plaintiff about this loan till March, 1876, when the defendant procured the new notes for the plaintiff, and the railroad bonds to secure them. The offer is only to get the plaintiff the market value of the bonds.

It is impossible to regard this letter as the acknowledgment of a long-precedent liability, to which it does not refer, directly or indirectly, when there is nothing in it that requires the existence of such an obligation as an explanation, but, on the contrary, its whole contents are as consistent with the non-existence of the agreement alleged, as with any other theory.

*Exceptions sustained.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.